## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| ALLISON WOODLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 6:18-cv-01778-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Allison Woodley ("Woodley") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"). (Doc. 1). Woodley timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Woodley filed her applications for a period of disability and DIB as well as for SSI on July 15, 2014. (Tr. 283-91, 302-07). Although she initially alleged an onset date of August 5, 2012, she later amended her alleged onset date to July 11, 2014. (Tr. 301). The State Agency initially denied Woodley's application on July 20, 2014 (tr. 158-61), and Woodley requested a hearing where she appeared on January 20, 2016 (tr. 80-117). After the hearing, the Administrative Law Judge ("ALJ") denied Woodley's claim and issued an unfavorable decision on June 2, 2016. (Tr.

134-53). The Appeals Council granted Woodley's request for review on April 25, 2017, under the substantial evidence provision of the Social Security Administration regulations, 20 C.F.R. §416.1470, and, under the authority of 20 C.F.R. § 416.1477, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ for resolution of several issues. (Tr. 154-57).

On remand, the ALJ held a second hearing on January 4, 2018. (Tr. 35-79). The ALJ denied Woodley's claim and issued a second unfavorable decision on March 30, 2018. (Tr. 12-34). Woodley sought review by the Appeals Council, but it declined her request on August 31, 2018. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On October 26, 2018, Woodley initiated this action. (*See* doc. 1).

Woodley was born on November 21, 1976, and was thirty-seven years old on her application date. (Tr. 27). Woodley has at least a high school education and is able to communicate in English. (*Id.*).

## II. Standard of Review[1]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[1]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)  whether the claimant can perform his or her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Woodley had not engaged in substantial gainful activity since July 11, 2014, the application date. (Tr. 18). At Step Two, the ALJ found Woodley had the following severe impairments: hepatitis C, history of opioid dependence, major depressive disorder not otherwise specified, generalized anxiety disorder, obsessive compulsive disorder, panic disorder, and trichotillomania (i.e., recurrent, irresistible urges to pull out one's hair). (Tr.

4

18-22). At Step Three, the ALJ found Woodley did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-23).

Before proceeding to Step Four, the ALJ determined Woodley's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 416.945(a)(1). The ALJ determined that Woodley had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except that Woodley can frequently climb ramps and stairs but never climb ladders or scaffolds; she can frequently stoop, kneel, crouch, and crawl; she should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operator commercial motor vehicles; she could do simple routine repetitive tasks; she should be limited to making simple work related decisions; she should have no interactions with the general public but should have occasional interactions with co-workers and frequent interaction with supervisors; she would be able to accept constructive non-confrontational criticism and would be able to accept changes in the work place setting if introduced gradually and infrequently; a well-spaced work environment would be best for maximum concentration; she would be unable to perform assembly line work with production rate pace but could perform other goal-oriented work; in addition to normal workday breaks, she would need to be off-task 5% of an eight-hour workday (non-consecutive minutes); she would potentially miss one perhaps two days of work per month on a regular and recurring basis; she would also benefit from a flexible work schedule while maintaining full time employment. (Tr. 23-27).

At Step Four, the ALJ determined Woodley has no past relevant work. (Tr. 27). At Step Five, the ALJ determined, based on Jones' age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Woodley could perform. (Tr. 27-28). Therefore,

5

the ALJ determined Woodley had not been under a disability and denied Woodley's claim. (Tr. 28).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Woodley contends the ALJ's determination that she is not disabled lacks substantial evidence. (Doc. 13 at 21). Specifically, Woodley alleges three errors: (1) the ALJ failed to articulate good cause for disregarding treating psychiatrist Dr. Terry Bentley's opinions (*id.* at 23-26); (2) the ALJ failed to properly evaluate Woodley's severe impairment of trichotillomania (*id.* at 27-28); and (3) the ALJ failed to properly evaluate Woodley's subjective symptoms and complaints of pain/mental impairments (*id.* at 28-35).

### A. Treating Psychiatrist Dr. Terry Bentley's Opinions

Woodley contends the ALJ failed to articulate good cause for disregarding or discounting the opinion of Dr. Terry Bentley, Woodley's treating psychiatrist. (Doc. 13 at 23-26). Medical opinions relevant to a Social Security claim are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or

mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The regulation set forth in 20 C.F.R. § 404.1527(c) requires that a treating doctor's opinion on the "nature and severity" of an impairment will be given "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other medical evidence. The regulation further provides that the longer the treatment relationship has existed, the more weight the opinion is entitled to receive. Even if not entitled to controlling weight, it is well established under Eleventh Circuit law that the opinion, diagnosis, and medical evidence of the claimant's treating physician should be accorded substantial or considerable weight unless "good cause" is shown for not doing so. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527, 416.927(d). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

7

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. See also 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c). It follows that the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight. *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988); *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987).

The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). When the ALJ fails to "state with at least some measure of clarity the grounds for his decision," the district court must decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). Without clarification of the ALJ's process of weighing the opinion, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty

to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Winschel*, 631 F.3d at 1179 (11th Cir. 2011) (quoting Cowart, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted). The ALJ may ignore the opinion of the treating physician regarding disability only if the opinion is so brief and conclusory that it lacks persuasive weight or is unsupported by any clinical or laboratory findings. *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

Dr. Bentley offers several opinions throughout the record. Initially, the ALJ acknowledges Woodley's treatment history for the specified mental impairments, including the severe impairments of major depressive disorder not otherwise specified, generalized anxiety disorder, obsessive compulsive disorder, panic disorder, and trichotillomania. (Tr. 18, 25). The ALJ recognized Woodley was consistently noted as having a coherent thought process and good insight and judgment. (Tr. 25). He further noted that Woodley was negative for tangential thinking, hallucinations, and suicidal ideations. (*Id.*). The ALJ noted that there are occasional problems with Woodley's mood, but most of the treatment records describe her mood as appropriate, normal, fair, or good. (*Id.*). The ALJ cited treatment records from September 2017 that described Woodley's medications as working well and her anxiety to be pretty well controlled. (*Id.*). The ALJ noted Woodley's complains of memory problems, but pointed to treatment records that consistently noted no memory deficits. (*Id.*). The lack of memory deficits was confirmed by Dr. Pugh. (*Id.*). The ALJ also acknowledges Woodley's allegations of problems getting along with others and social anxiety, and further acknowledges that Woodley reported getting along pretty well with authority figures and reported that she has never been fired or laid off from a job because of problems getting along with others. (*Id.*).

As an initial matter, the ALJ properly accorded no weight to Dr. Bentley's opinions that Woodley would be unable to work because whether a claimant is able to work is an issue reserved to the Commissioner. (Tr. 26). *Dyer*, 395 F.3d at 1210. Next, the ALJ accorded little weight to Dr. Bentley's opinion that Woodley had marked and extreme limitations. (Tr. 26) (citing tr. 657-659). The ALJ articulated good cause for discounting Dr. Bentley's opinion. Specifically, the ALJ explained that this opinion was not supported by Dr. Bentley's longitudinal treatment record as there were no significant issues noted or documentation that Woodley's medication was not effective at controlling symptoms. (*Id.*). The ALJ also noted that Woodley was able to maintain her financial interest and noted there were no hospitalizations or more intensive counseling in the record. (*Id.*). Likewise, Dr. Bentley opined that Woodley had marked and extreme limitations in his Medical Source Statement, which the ALJ accorded little weight because they were not supported by the treatment notes. (*Id.*) (citing tr. 745-746). The ALJ also gave little weight to Dr. Bentley's opinions contained in his affidavit, explaining that the treatment record does not indicate severe symptomology. (Tr. 26) (citing 660-676). The ALJ accorded little weight to Dr. Bentley's opinion that Woodley would miss four days of work per month because it was speculative and not supported by anything in the record. (Tr. 27).

Although Dr. Bentley treated Woodley over the course of many years, the ALJ properly discounted his opinions by articulating good cause for each opinion to which he did not accord controlling weight. Notably, the ALJ asserts that Dr. Bentley's longitudinal treatment records do not indicate any significant limitations and more recent treatment records[3] describe Woodley's

---

[3] These treatment notes indicate that, although Woodley reported some fluctuations in mood, from January 2016 through April 2017, Dr. Bentley continued all of Woodley's medications without increase. (Tr. 786-794). Only at Woodley's July 18, 2017 appointment, did Dr. Bentley increase her dosage of Prozac. (Tr. 795). There is no indication this increase was not effective.

10

medication as being effective at controlling her symptoms. (Tr. 19-20, 26-27, 786-795).

The ALJ also found Dr. Bentley's opinions inconsistent with the findings of Dr. Velda Pugh, who conducted a consultative psychological evaluation of Woodley on June 24, 2017, and found her to have no more than moderate limitations. (Tr. 27) (citing tr. 762-67). The ALJ also assigned "good weight" to Dr. Rodrigues' opinions, who's disability determination explanation was issued on August 8, 2014. (Tr. 26) (citing tr. 118-32).

As noted above, the ALJ explained he afforded "little weight" to Dr. Bentley's January 20, 2016 opinions (tr. 657-659) that Woodley had marked or extreme limitations, Dr. Bentley's affidavit (tr. 660-676), and Dr. Bentley's July 2017 opinion (tr. 745-746) because the severity of the limitations in those opinions were not supported by, among other things, Dr. Bentley's longitudinal treatment record. (Tr. 26-27). Woodley has failed to point to any specifics in Dr. Bentley's treatment notes to show how the ALJ's determination lacks substantial evidence.

Additionally, Dr. Bentley submitted a second sworn statement, stating:

> I've looked back through her notes and it said, "How are you doing," and she said, "good." I want to tell the judge that's a relative thing. That's based on her symptoms given her circumstances, which means she's not going anywhere. She's not doing anything that would elevate her anxiety more than necessary. She pretty much isolates herself socially. She does live with her boyfriend and she had the recent stress of her brother getting in a fight with her boyfriend. The brother is a notorious nefarious character, so she's been stressed with that. That makes her feel worse both physically and emotionally . . . She's also been worrying because she's been diagnosed as having Hepatitis C. . . . .

(Tr. 756-57). While the undersigned appreciates what Dr. Bentley is saying about Woodley's treatment notes and the nature of Woodley's condition, the ALJ articulated good cause for discounting Dr. Bentley's opinions. Furthermore, this shows that any additional limitations to Woodley's RFC would be speculative and not based on the record. Accordingly, the ALJ did not err when he discounted Dr. Bentley's opinions.

11

## B. Woodley's Severe Impairment of Trichotillomania

Although the ALJ found Woodley's diagnosed trichotillomania to be a severe impairment (tr. 18), there is no other mention of the trichotillomania throughout the ALJ's decision. Because of this, Woodley contends the ALJ did not properly consider her trichotillomania throughout his decision. (Doc. 13 at 27). The ALJ cites Dr. Bentley's September 17, 2014 Medical Source Statement that shows diagnoses of severe depression, obsessive compulsive disorder, and panic disorder. (Tr. 18, 610). However, Woodley points to another medical source statement that Dr. Bentley completed showing diagnoses of generalized anxiety disorder, obsessive compulsive disorder, panic disorder, and trichotillomania. (Tr. 659). Woodley contends the ALJ should have expressly considered her struggles with trichotillomania, as it is noted extensively in Dr. Bentley's records, starting in January 2007. (Tr. 533). Trichotillomania is a mental disorder, related to severe anxiety disorders, that causes a person to pull out their own hair, often subconsciously. (Tr. 754-55). According to Dr. Bentley, Woodley's trichotillomania was so severe, it left visible bald spots on her scalp. (*Id*).

The Commissioner points to the fact that the ALJ discussed that Woodley's psychotropic medications were working well, specifically mentioning Haldol, which Dr. Bentley explained "helped alleviate the trichotillomania." (Tr. 21, 25, 482). However, in Dr. Bentley's second sworn statement from July 2017, Dr. Bentley states that Woodley is "continually having to deal with trichotillomania." (Tr. 754). This statement indicates that Haldol had not completely controlled Woodley's symptoms of trichotillomania. The Commissioner also points to the fact state agency psychologist Dr. Leslie Rodrigues noted Woodley's diagnosis of trichotillomania and that the ALJ assigned Dr. Rodrigues' opinion "good weight." (Doc. 14 at 19-20).

To the extent the Commissioner states that Woodley felt her trichotillomania was triggered

by caffeine, the last mention of this was in 2014 – three years prior to Woodley's second hearing. (Tr. 476). While Dr. Bentley sometimes grouped trichotillomania with OCD, trichotillomania and OCD were classified separately at times. (Tr. 754). In total, Dr. Bentley's treatment notes mention trichotillomania forty-nine times. (Tr. 476-509, 529-33, 631-33, 787-89, 793-98).

Regardless of how many times Woodley's trichotillomania was mentioned, the mere existence of an impairment does not reveal the extent to which the impairment limits the claimant's ability to work or undermine an ALJ's determination in that regard. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). While the record indicates Woodley suffers from trichotillomania, she has not shown how her trichotillomania causes limitations not accommodated in her RFC finding.[4] "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer*, 395 F.3d at 1211. Accordingly, the ALJ did not err in his assessment of Woodley's trichotillomania.

### C. The ALJ's Evaluation of Woodley's Subjective Complaints

When a claimant alleges disability based on subjective symptoms, the ALJ must determine whether the claimant has a condition that one could reasonably expect to cause the alleged symptoms. *See* 20 C.F.R. §416.929(c)(1). If the ALJ determines the claimant has such a condition, the ALJ must then evaluate the intensity and persistence of the alleged symptoms and determine how they limit the claimant's ability to work. *See id.* During this evaluation, the ALJ will consider the claimant's testimony regarding her symptoms, including any inconsistencies between the testimony and other evidence. *See id.* § 416.929(c)(3)-(4). An ALJ may reject a claimant's testimony of disabling symptoms if he provides "explicit and adequate reasons" for doing so. *Dyer*

---

[4] The RFC takes into account anxiety-related and compulsion-related impairments by limiting Woodley to simple-work related decisions and no interaction with the general public. (Tr. 24).

*v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Here, the ALJ considered Woodley's allegations and determined that one could reasonably expect her impairments to "cause some of the alleged symptoms," but concluded that her "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent" with the evidence. (Tr. 24-25). The ALJ found the record did not support disabling physical limitations resulting from Woodley's hepatitis C, as her physical examinations were largely normal (tr. 25, 464, 561, 636, 640, 684), she did not have liver failure (tr. 25, 464), and records did not reflect persistent symptoms related to hepatitis (tr. 25). Instead, records reflect that her ER visit for hepatitis C symptoms was prompted by anxiety after reading about the disease, but after the doctor reassured her the physical examination was normal, she seemed "much more comfortable . . . ." (Tr. 463-65).

The ALJ also concluded Woodley's allegations of hypothyroidism and endometriosis were not severe impairments, as the record did not support "persistent symptoms related to these impairments." (Tr. 22). The ALJ discussed that the treatment records did not reflect complaints of persistent fatigue related to hypothyroidism. (Tr. 22, 601, 635, 639, 643, 778). As for Woodley's complaints of "endometriosis pain," although clinic notes indicate symptoms consistent with endometriosis, she was not diagnosed this condition and the clinic provider explained that an endometriosis diagnosis required direct visualization. (Tr. 430, 449). Regardless, Woodley reported that the pain she attributed to endometriosis lasted only one day and became much better. (Tr. 449).

To the extent Woodley alleges any physical pain arising from other causes, the ALJ determined that her physical symptoms did not prevent her from performing a reduced range of

medium work. (Tr. 23). The ALJ gave "great weight" to the opinion of consultative examiner Dr. Boohaker, who observed Woodley had 5/5 strength in all her of extremities, intact sensation, full range of motion in all her extremities, walked normally without difficulty or assistance, walked on her toes and heels without difficulty, had unremarkable tandem heel walking, was able to get up and out of a chair without difficulty, and could squat on the floor and recover. (Tr. 19, 25, 602-04). Although Dr. Boohaker recognized Woodley complained of joint pain and a limited ability to stand and lift, he opined that she had no limitations on her ability to stand, sit, walk, bend or stoop, reach handle, lift, carry or see with memory and understanding. (Tr. 18-19, 601, 604). Likewise, the ALJ discussed and relied upon Dr. Hermecz's physical examination findings, which do not suggest any greater physical limitations on Woodley's ability to work. (Tr. 25, 738, 744).

As to Woodley's mental impairments, the ALJ recognized Woodley underwent years-long treatment for her mental impairments. (Tr. 25). The ALJ observed that Dr. Bentley's treatment notes reflected Woodley had normal mental status examinations, including a coherent thought process; absence of tangential thinking, hallucinations, and suicidal ideations; and a good insight and judgment. (Tr. 20-21, 23, 25, 476, 478, 479, 481-84, 631, 633, 786-92, 794-95, 797-98). Dr. Bentley frequently noted Woodley's speech was clear and her affect was euthymic. (Tr. 476, 478-79, 481-84, 631-33, 786-88, 790-92). The ALJ recognized Dr. Bentley noted occasional problems with Woodley's mood (tr. 25), but most of his and other clinical records described Woodley's mood as appropriate, normal, fair, ok, or good. (Tr. 20-21, 23, 25, 432, 450, 464, 476, 481, 483-84, 549, 561, 631, 633, 636, 640, 786-88, 794).

The ALJ also noted that psychotropic medication helped to control Woodley's symptoms, with treatment records as recent as September 2017, reflecting that her medications were working well and her anxiety was "pretty well controlled." (Tr. 21, 25, 631, 979). The ALJ also observed

15

that Woodley had never been hospitalized for mental health issues. (Tr. 26, 600).

The ALJ also cited the opinions of state agency reviewing psychologist Dr. Rodrigues and consultative examiner Dr. Pugh, who both concluded that Woodley had no more than moderate limitations in the area of mental functioning. (Tr. 21-23, 26, 118-32, 764-65). Additionally, although Woodley alleged problems with memory, treatment records consistently noted no memory deficits. (Tr. 22, 25, 476, 478-79, 482-84, 631, 786, 797).

Woodley takes issue with the ALJ relying on the fact she "drives a car and shops in stores." (Doc. 15 at 2). Woodley points to her testimony that she "maybe" drives once a month due to severe anxiety and panic attacks, that she seldom goes to the grocery store, and that her boyfriend does most of the shopping. (Tr. 61). Woodley is correct that driving once a month is not evidence of an ability to work full time. However, this is not the only support for the ALJ's conclusion. "The question is not . . . whether the ALJ could have reasonably credited [Woodley's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938-39 (11th Cir. 2011). While the undersigned would not consider driving once a month as evidence of a lack of crippling anxiety, the ALJ points to ample other evidence (outlined above) to support his conclusion.

Woodley has not shown any error in the ALJ's subjective symptom assessment. The ALJ provided explicit and adequate reasons to support his determination that one could reasonably expect Woodley's impairments to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and

memoranda of the parties, the decision of the Commissioner of Social Security denying Woodley's claim for a period of disability, disability insurance benefits, and supplemental security income benefits is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**

DONE this 24th day of March, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE